**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 4, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

AMY SHROFF; LAILA KRUSE, a
minor by her mother and next friend
Amy Shroff,

      Plaintiffs - Appellees,

v.

FRANK SPELLMAN, in his official
and individual capacity,

      Defendant - Appellant.

No. 09-1084

---

**ORDER**

---

Before **TACHA, ALARCÓN,**[*] and **TYMKOVICH,** Circuit Judges.

---

      Appellee's motion to correct the opinion is granted. The corrected opinion

filed nunc pro tunc to March 23, 2010, is attached to this order.

      Entered for the Court

      *Elisabeth A. Shumaker*

      Elisabeth A. Shumaker, Clerk

---

[*]Honorable Arthur L. Alarcón, Senior Circuit Judge, U.S. Court of Appeals
for the Ninth Circuit, sitting by designation.

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 23, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

AMY SHROFF; LAILA KRUSE, a
minor by her mother and next friend
Amy Shroff,

      Plaintiffs - Appellees,

v.

FRANK SPELLMAN, in his official
and individual capacity,

      Defendant - Appellant.

No. 09-1084

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 07-CV-01466-REB-KMT)**

Suzanne A. Fasing, Assistant City Attorney, Office of the Denver City Attorney,
Denver, Colorado, (Michael T. Lowe of Bruno, Colin, Jewell, & Lowe, P.C.,
Denver, Colorado, on the briefs) for Defendant-Appellant.

Qusair Mohamedbhai, (David A. Lane, with him on the brief) Killmer, Lane &
Newman, LLP, Denver, Colorado, for Plaintiffs-Appellees.

Before **TACHA, ALARCÓN**,** and **TYMKOVICH,** Circuit Judges.

_____

**ALARCÓN**, Circuit Judge.

_____

Frank Spellman, a Denver Police Officer, has appealed from the denial of his motion for summary judgment based on his defense of qualified immunity in this civil rights action filed against him by Amy Shroff pursuant to 42 U.S.C. § 1983. Officer Spellman contends that Ms. Shroff failed to demonstrate that he violated her federal constitutional rights by arresting her without probable cause and invading her right to privacy by requiring her to be in the presence of a female police cadet while she exposed her breasts to pump milk for her baby.

We affirm because we conclude that the district court did not err in concluding that Officer Spellman arrested Ms. Shroff without probable cause, and subjected her to a strip search in violation of the Fourth Amendment.

**I**

**A**

In response to Officer Spellman's motion for summary judgment, Ms.

_____

**Honorable Arthur L. Alarcón, Senior Circuit Judge, U.S. Court of Appeals for the Ninth Circuit, sitting by designation.

Shroff presented the following evidence to demonstrate that Officer Spellman is not entitled to qualified immunity as a matter of law.[1]

Ms. Shroff and Greg Kruse engaged in a sexual relationship. During that time, she bore a child named Laila Kruse ("Laila"). Laila was born on November 7, 2005. During this relationship, Mr. Kruse subjected Ms. Shroff to several acts of physical violence. Mr. Kruse choked her and threw her against a wall. He also broke the wrist of a friend of Ms. Shroff. During a Thanksgiving dinner party in 2005, Mr. Kruse was extremely intoxicated and was out of control "swinging his fists around." The police were called because of his conduct.

Ms. Shroff filed an action in the County Court, City and County of Denver ("County Court") to obtain a civil protection order to restrain Mr. Kruse from committing further violent acts against her or harassing her. The County Court issued a temporary protection order ("restraining order"). It was served on Mr. Kruse.

The restraining order provides as follows:

> THE COURT ORDERS THAT YOU THE RESTRAINED PARTY shall not contact, harass, stalk, injure, intimidate, threaten or molest the Petitioner(s) or any of the children if so noted; or otherwise violate this Order. You shall not use, attempt to use or threaten to

---

[1]In determining whether the district court erred in denying a motion for summary judgment based on the defense of qualified immunity, we review the evidence in the light most favorable to the non-moving party. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

use physical force against the Petitioner(s) or any of the children if so noted; that would reasonably be expected to cause bodily injury. You shall not engage in any conduct that would place the Petitioner or any of the children if so noted; in resonable [sic] fear of bodily injury.

✓ You must keep a distance of at least 100 yards from the Protected Party and or the below named children.

1. *No Contact Provisions*

✓ It is ordered that you shall have no contact of any kind and stay at least 100 yards from the Petitioner(s) or any of the children if so noted; and you shall not attempt to contact the Petitioner(s) or any of the children if so noted; through any third person, except your attorney, except as follows:

<u>NO EXCEPTIONS</u>

IMPORTANT INFORMATION ABOUT PROTECTION ORDERS

GENERAL INFORMATION

✓ This Order or injunction shall be accorded full faith and credit and be enforced in every civil or criminal [court] of the United States, Indian Tribe or United States Territory pursuant to 18 [§] USC 2265.
✓ The Restrained Party may be subject to Pursuant [sic] to 18 USC § 922(d)(g), which makes it unlawful for any person to possess or transfer a firearm who is subject to a Court Order that restrains such person from harassing, stalking or threatening an intimate partner of such person or a child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child.

NOTICE TO RESTRAINED PARTY:

✓    You are directed to appear before this Court on the date shown on the front of this form to show cause, if any exists, why this Temporary Protection Order shall not be made permanent.

✓    This Temporary Protection Order shall be made permanent without further notice of service or the Court may continue the Temporary Protection Order to a certain date. You are notified that Permanent Civil Protection Order shall remain [in] effect until further Order of the Court. Such Permanent Order will subject you to Federal Laws restricting firearms possession and sale 18 USC § 922(g)(8), § 924(a)(2).

✓    A violation of a Protection Order may be a misdemeanor, municipal ordinance violation or a delinquent act (if committed by a juvenile) and is a deportable offense. Anyone over the age of 18 who violates this Order may be subject to fines of up to $5,000.00 and up to 18 months in jail. Violation of this Order may constitute contempt of Court. Anyone under the age of 18 who violates this Order may be subject to commitment to the Department of Human Services for up to two years.

✓    You may be arrested or taken into custody without notice if a law enforcement officer has probable cause to believe that you violated this Order.

✓    If you violate this Order thinking that the other party or anyone else has given you permission, YOU ARE WRONG, and can be arrested and prosecuted. The terms of this Order can not be changed by agreement of the [sic] ONLY THE COURT CAN CHANGE THIS ORDER.

✓    Possession of a firearm while this Protection Order is in effect may constitute a felony under the Federal law, 18 USC §922(d)(8).

NOTICE TO PETITIONER/PROTECTED PARTY:

✓    You are hearby informed that if this Order is violated you may call law enforcement.

✓ You may initiate contempt proceedings against the Restrained Person.

✓ You can not give the Restrained Person permission to change or ignore this Order in any way. ONLY THE COURT CAN CHANGE THIS ORDER.

✓ $46.00 dollars filing fee

NOTICE TO LAW ENFORCEMENT OFFICIALS:

✓ If the Order has not been personally served, the law enforcement officer responding to a call of assistance, shall serve a copy of said order on the person named/Restrained Person therin [sic] and shall write the time, date, and manner of service on the Protected Person[']s copy of such Order and shall sign such statement. The officer shall provide the Court with a completed return of service form. (§13-14-102(11-12))

✓ You shall use every reasonable means to enforce this Protection Order.

✓ You shall arrest or take into custody, or if an arrest would be impractical under the circumstances, seek a warrant for the arrest of the Restrained Person when you have information amounting to probable cause that the Restrained Person has violated or attempted to violate any provision of this Order subject to criminal sanctions pursuant to § 18-6-803.5 CRS or municipal ordinance, and the Restrained Person has been properly served with a copy of this Order or the Restrained Person has received actual notice of the existence and substence [sic] of such Order.

✓ You shall enforce this Order even if there is no record of it in the Protection Order Central Registry.

✓ You shall take the Restrained Person to the nearest jail or detention facility.

✓ You are authorized to use every reasonable effort to protect the Protected Party and named children to prevent further violence.

Approximately two weeks after the restraining order was issued, a hearing was held to determine Mr. Kruse's visitation rights. The County Court ordered that Ms. Shroff deliver Laila to Mr. Kruse's mother at the Denver Police Department District 3 ("District 3") station, located at University Boulevard and Interstate 25 so that Mr. Kruse could visit Laila in his mother's presence for two hours on Saturday, Sunday, and Monday mornings.

On Monday, February 26, 2006, Ms. Shroff and her stepfather drove to the District 3 police station to deliver Laila to Mr. Kruse's mother. As she traveled down University Boulevard, Ms. Shroff saw Mr. Kruse's truck parked outside of the Campus Lounge, a bar, a few blocks from District 3. Ms. Shroff parked her car behind Mr. Kruse's truck and took a picture of the license plate, the Campus Lounge sign, and the clock on her dashboard. She photographed his truck to record the fact that it was parked outside a bar a few minutes before he was scheduled to exercise his visitation rights with his infant daughter. She did not see Mr. Kruse come out of the bar. Ms. Shroff then took her daughter into the District 3 police station and handed her over to Mr. Kruse's parents. Ms. Shroff left the police building and entered her car. Mr. Kruse parked his truck behind her car thereby preventing her from backing up. Ms. Shroff took a picture of Mr. Kruse talking to his parents whose car was parked one or two spaces away.

Ms. Shroff retrieved the restraining order from her automobile and ran back

to the police station. She told two officers that Mr. Kruse was in the parking lot in violation of the restraining order. The officers went out to the parking lot to look for Mr. Kruse, however, he had left. The officers telephoned Mr. Kruse at his home which was near the police station. Mr. Kruse returned to the police station in five minutes.

Ms. Shroff and her stepfather explained to Officer Spellman that Mr. Kruse had violated the restraining order by coming to the District 3 police station and parking his truck behind her car so that she could not leave. They also told Officer Spellman that the restraining order was not reciprocal and that it applied only to Mr. Kruse. After reading the restraining order, Officer Spellman stated: "You know it looks like you're going to be arrested. I knew this was going to happen. I see you guys every weekend."

On the date she was arrested by Officer Spellman, Ms. Shroff was nursing her baby. When she was placed in a holding cell, she told Officer Spellman that her daughter was nursing and she did not have enough breast milk at home. She asked Officer Spellman if she could use her breast pump before she was transported to the city jail. Officer Spellman told her that this situation would not have occurred if she had not caused problems by coming to the District 3 police station on multiple occasions.

Ms. Shroff told Officer Spellman repeatedly:

Please don't do this. I don't have any way of feeding my child. She's nursing. She really can't tolerate formula. We've already had her in the pediatrician's office for these issues in the past . . . [t]here's something in her digestive system that she just can't digest it and it would make her sick."

Officer Spellman replied: "She better start liking formula." Ms. Shroff's stepfather returned to her home and retrieved her breast pump. Officer Spellman permitted Ms. Shroff to go to a conference room that had no windows or cameras to pump her breasts in the presence of a female cadet. The supervising nurse at the city jail testified in her deposition that the pumping of breasts after childbirth is a medical necessity in order to relieve pain.

Being required to expose her breasts in the presence of the female officer was extremely embarrassing to Ms. Shroff. She had a hard time with her milk "letting down." The milk she expressed was turned over to her stepfather. He cared for Laila until Ms. Shroff was released from the city jail. After she pumped her breasts, Officer Spellman drove her to the city jail where she was incarcerated for approximately twenty-four hours.

**B**

Officer Spellman offered the following evidence in support of his motion for summary judgment based on his defense of qualified immunity. While he was on patrol on February 26, 2006, he received a message from a police dispatcher that Mr. Kruse had reported that Ms. Shroff was stalking and photographing him in

violation of a restraining order.

Officer Spellman testified in his deposition that when he arrived at the District 3 police station, Ms. Shroff and her stepfather "may have" told him that the order was not a reciprocal restraining order. Officer Spellman also interrogated Mr. Kruse. He also looked at a photograph taken by Ms. Shroff that showed that she "got within one hundred yards" of Mr. Kruse.

After Ms. Shroff informed Officer Spellman that Mr. Kruse had violated the restraining order by blocking her car in the police station parking lot, Officer Spellman told her: "I'm not going to arrest somebody for coming to the police station to make a complaint . . . ."[2] Officer Spellman stated that he concluded that Ms. Shroff was in contempt of the instructions to the protected party in the restraining order that provide as follows: "You cannot give the restrained party permission to change or ignore this order in any way." Officer Spellman also testified, however, that Ms. Shroff did not give Mr. Kruse permission to change or ignore the restraining order. Officer Spellman stated that "I was always under the impression that they can't – *if she's restrained*, you can't unilaterally go over there and violate the same order." (emphasis added.) Mr. Kruse did not tell Officer Spellman that the restraining order required that Ms. Shroff stay 100 yards away

_____

[2]There is no evidence in the record that Mr. Kruse went to the District 3 police station to make a complaint. To the contrary, the record shows that Mr. Kruse left the parking lot after Ms. Shroff returned to the police station to report that he had prevented her from leaving the parking lot.

from him.  Officer Spellman did not check the database "to see if Greg Kruse had a restraining order against Amy Shroff."

After Officer Spellman arrested Ms. Shroff, she told him she was nursing her child and needed to pump breast milk for her baby.  Officer Spellman permitted her stepfather to go to her home to retrieve her breast pump.

When Ms. Shroff's stepfather returned with the breast pump, Officer Spellman escorted Ms. Shroff to a windowless conference room.  He also ordered that a female cadet be present while she pumped her breasts.  He testified during his deposition that: "She was a prisoner so I had to have somebody with her at all times or leave her in the holding cell.  I was doing her a favor."

**II**

A criminal complaint alleging that Ms. Shroff had violated the Municipal Code of the City and County of Denver was prepared by a law enforcement officer. The signature on the complaint is illegible.  It provides as follows:

> The probable cause for the arrest of the above-named individual is as follows: "The suspect Amy Shroff 9-23-76 parked her car behind victim's parked car at University Blvd and Exposition Ave and took pictures of victim's vehicle and victim as he walked out of the Campus Lounge.
>
> Suspect violated restraining order 05-W1696, Denver Court 124d.
>
> Victim identified suspect at District 3."

Judge John M. Marcucci signed the complaint and checked a box on the form

which states "Probable Cause Found."[3]  The criminal charge against Ms. Shroff was dismissed several days after it was filed.

## III

The complaint in this matter was filed on July 13, 2007.  Ms. Shroff alleged, *inter alia*, that she was entitled to damages against the Defendants for violating the Fourth Amendment by subjecting her to an illegal search and seizure "without any basis for believing that she was engaged in criminal activity."  She also alleged in the first count that Defendant Spellman "intentionally, knowingly, and recklessly subjected her to an illegal, demeaning, and invasive seizure without any reasonable justification."  In count two she alleged that her Fourth Amendment right to freedom from unlawful and unreasonable searches was violated by Officer Spellman because he subjected her to a "strip search" in violation of C.R.S. § 16-3-405(5), (6).

In her third claim for relief, she alleged that she was deprived of her constitutionally protected liberty interest in familial association.  In her fourth claim for relief, she alleged that Officer Spellman, the City and County of Denver,

---

[3]The indication on the complaint that there was probable cause to arrest Ms. Shroff was apparently based solely on the allegations set forth by the officer on the complaint, instead of a finding made by Judge Marcucci after an evidentiary hearing.  Colorado law does not provide for a preliminary hearing to determine probable cause for a Municipal Code violation.  *See* C.R.S. §16-5-301.

Undersheriff William Lovingier, and unknown Denver Deputy Sheriffs were liable as policy makers for the failure to train and supervise officers of the Denver Sheriff Department adequately with respect to the right of a nursing woman to use a breast pump privately and that this failure violated her constitutional rights.

Officer Spellman filed a motion for summary judgment on August 6, 2008. He alleged that he was entitled to qualified immunity on Ms. Shroff's first claim because he reasonably believed he had probable cause to arrest her. He also contended that he was entitled to qualified immunity as to the second count because § 1983 "does not provide a basis for legal redress for an alleged 'strip search' performed in violation of C.R.S § 16-3-405."

The district court denied Officer Spellman's August 6, 2008 motion for summary judgment. It dismissed with prejudice Ms. Shroff's third claim against the City and County of Denver for violation of the right to familial association and her fourth claim for supervisory and municipal liability for the alleged violation of the right to familial association. The same claims against the unknown defendants were dismissed for failure to prosecute. The district court also ordered that the caption in this case be amended to drop the City and County of Denver, Undersheriff Lovingier, and the Unknown Denver Deputy Sheriffs because the claims asserted against them were dismissed.

Officer Spellman filed a timely notice of appeal regarding the denial of his

motion for summary judgment based on qualified immunity on Ms. Shroff's first and second claims.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**IV**

**A**

In this appeal, Officer Spellman contends that we should vacate the district court's order denying his motion for summary judgment because the undisputed evidence demonstrates that there was probable cause to arrest Ms. Shroff and require her to expose her breasts in the presence of a female cadet because Ms. Shroff was a prisoner.  Alternatively, he argues that the law was not clearly established that he lacked probable cause to arrest Ms. Shroff, or that requiring her to expose her breasts constituted a strip search in violation of the Fourth Amendment.

Ms. Shroff maintains that we lack jurisdiction to consider this interlocutory appeal because Officer Spellman's arguments on appeal are based on disputed issues of fact.  Relying on *DeAnzona v. City and County of Denver*, 222 F.3d 1229 (10th Cir. 2009), she argues that this Court may exercise its appellate jurisdiction only "[i]f the defendant argues that she is entitled to qualified immunity under the plaintiff's version of the facts because the plaintiff has not demonstrated a violation of clearly established law . . . ."  *Id.* at 1233.

The record in this case demonstrates that there are no genuine issues of fact

in dispute. Officer Spellman testified during his deposition that he arrested Ms. Shroff because he saw a photograph taken by Ms. Shroff that shows that she parked her car less that 100 yards from Mr. Kruse.

Ms. Shroff testified that she photographed Mr. Kruse's truck outside the Campus Lounge bar. She also that testified she did not see Mr. Kruse when she photographed his truck. She did not deny, however, that she was within 100 yards of Mr. Kruse. Thus, there is no conflict regarding whether Ms. Shroff was within 100 yards of Mr. Kruse outside the Campus Lounge bar.

This Court held in *Foote v. Spiegel*, 118 F.3d 1416 (10th Cir. 1997), that

[a] determination that the law allegedly violated by the defendant was clearly established at the time of the challenged actions is an abstract issue of law that is immediately appealable. A determination that under either party's version of the facts the defendant violated clearly established law is also immediately appealable.

*Id.* at 1422, (citing *Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996)); *Johnson v. Jones*, 515 U.S. 304, 312-14 (1995); *Mitchell v. Forsyth*, 472 U.S. 511, 522 (1985).

Officer Spellman testified that he arrested Ms. Shroff because she violated the terms of the restraining order. The sole issue before this Court is whether Officer Spellman violated clearly established law in arresting Ms. Shroff based on either party's version of the facts. Accordingly, we have jurisdiction to review this

interlocutory appeal.[4]

# B

Officer Spellman contends that the district court erred in determining that he

was not entitled to qualified immunity because he had probable cause to arrest Ms.

---

[4]In its "ORDER CONCERNING MOTIONS FOR SUMMARY JUDGMENT," the district court stated that "the following facts are not disputed." In its summary of the facts, the district court stated that Ms. Shroff parked her automobile within 100 yards of Mr. Kruse when she photographed his truck in front of the Campus Lounge. The district court also noted that Officer Spellman arrested her after reading the order restraining Mr. Kruse from coming within 100 yards of Ms. Shroff. We agree that these facts are undisputed. In denying the motion for summary judgment, however, the district court stated: "Viewing the evidence in the current record in the light most favorable to Shroff, I conclude that there remain genuine issues of material fact that are relevant to her Fourth Amendment unlawful seizure claim."

Ms. Shroff argues that this Court has no jurisdiction to consider this interlocutory appeal because "[t]his Court does not have jurisdiction to review a denial of summary judgment based on qualified immunity if the claim on appeal is based on disputed facts."

The district court did not identify the facts it considered to be disputed regarding Ms. Shroff's unlawful seizure claim. As discussed above, we have concluded we have jurisdiction because the facts relied upon by the parties are not in dispute. The only issue presented in this appeal is whether, as a matter of law, they demonstrate that Officer Spellman lacked probable cause to arrest and search Ms. Shroff. It is possible that the district court's amorphous statement that there are genuine issues of material fact in dispute was meant to reflect that there may be, for example, disputed facts regarding the amount of damages, if any, that should be awarded if this matter goes to trial. In any event, we may "affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *Weitzel v. Div. of Occupational & Prof'l Licensing*, 240 F.3d 871, 876 (10th Cir. 2001). We have jurisdiction over this interlocutory appeal because the record before us is sufficient to permit us to decide the pure question of law presented by the undisputed facts.

Shroff based on the totality of the circumstances. He argues that the district court erred in relying solely on the terms of the restraining order in determining whether he had probable cause to arrest Ms. Shroff. Officer Spellman maintains that the district court erred in failing to consider the undisputed fact that he was informed by a police dispatcher that Ms. Shroff had violated a restraining order, and Mr. Kruse's complaint that Ms. Shroff had been within 100 yards of him outside the Campus Lounge bar.

The district court's denial of qualified immunity is a question of law we review *de novo*. *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 1995) (en banc). We must review the evidence in the light most favorable to the non-moving party. *Id.*

Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure summary judgment should be granted "if the pleadings, the discovery, and disclosure materials on file and affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law."

In *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196 (10th Cir. 2009), this Court explained the procedure that should be followed in determining whether summary judgment should be granted based on qualified immunity.

> In qualified immunity cases at the summary judgment stage, a plaintiff must clear two hurdles. The plaintiff must demonstrate on the facts alleged (1) that the defendant violated his constitutional or statutory rights, and (2) that the constitutional right was clearly

- 17 -

established at the time of the alleged unlawful activity. *Pearson v. Callahan*, ___ U.S.___, [129 S. Ct. 808, 815-16, 818; *Saucier v. Katz*, 533 U.S. 194, 200, (2001).]

Recognizing the complexities of resolving the question of constitutional liability, the Supreme Court allows us the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 817-18; *see Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009) (by explaining that *Pearson* granted discretion to determine which qualified immunity prong to address first).

Here, the district court denied the police officers' motion for summary judgment, finding that the plaintiffs satisfied their two-part burden. To affirm, we must agree that the plaintiffs cleared both hurdles—we must thus address both. To reverse, however, we need only find that the plaintiffs failed either requirement.

*Id.* at 1199. Because we have concluded that Ms. Shroff has cleared both of the *Saucier* hurdles, we address each of them.

## V

## A

It has long been established that an arrest and search without probable cause that a crime has been committed violates the Fourth Amendment. *See Cortez*, 478 F.3d at 1117 ("The law was and is unambiguous: a government official must have probable cause to arrest an individual."). In this matter, it is undisputed that Officer Spellman arrested Ms. Shroff without a warrant and required her to expose her breasts in the presence of a female cadet.

- 18 -

Prior to arresting Ms. Shroff, Officer Spellman had been informed by a police dispatcher that Mr. Kruse had reported that Ms. Shroff had violated a restraining order. After being confronted at the police station by Ms. Shroff who demanded that Mr. Kruse be arrested for blocking her car from exiting the police station parking lot, Officer Spellman interrogated Mr. Kruse, Ms. Shroff, and her stepfather. Mr. Kruse, Ms. Shroff, and her stepfather informed Officer Spellman that Ms. Shroff had parked her car behind Mr. Kruse's truck outside a bar. Ms. Shroff told Officer Spellman that she photographed Mr. Kruse's truck because he apparently was in a bar a few minutes before he was scheduled to exercise his visitation rights with their infant daughter.

Ms. Shroff showed Officer Spellman the restraining order that directed Mr. Kruse to keep a distance of at least 100 yards from Ms. Shroff. She explained to Officer Spellman that, as the protected party in the restraining order, she was not barred from being within 100 yards of Mr. Kruse because it was not a reciprocal restraining order.

Officer Spellman read the restraining order. He concluded that Ms. Shroff had violated the provisions of the restraining order that provides that the protected party "can not give the Restrained Person permission to change or ignore this Order."

None of the witnesses interrogated by Officer Spellman, including Mr.

Kruse, stated that Ms. Shroff gave him permission to come within 100 yards of her. It is also undisputed that Ms. Shroff did not see Mr. Kruse approach her from the bar as she photographed his truck.

Thus, there is no evidence in this record that supports Officer Spellman's conclusion that he had probable cause to arrest Ms. Shroff for being in contempt of the order restraining Mr. Kruse from coming within 100 yards of her. Furthermore, the restraining order does not authorize a law enforcement officer to arrest a protected party. The portion of the restraining order entitled "NOTICE TO LAW ENFORCEMENT OFFICIALS" expressly provides as follows: "You shall arrest or take into custody, or if an arrest would be impractical under the circumstances, seek a warrant for the *Restrained Person when you have information amounting to probable cause that the Restrained Person* has violated or attempted to violate any provision of this Order . . . ." Accordingly, we are persuaded that Ms. Shroff has met her burden of demonstrating that Officer Spellman violated her Fourth Amendment right to be free from an unreasonable search and seizure.

**B**

Officer Spellman contends that "[e]ven if the court were to find that Shroff demonstrated a Fourth Amendment violation for unlawful seizure, Spellman is nonetheless entitled to qualified immunity because Shroff has failed to establish the second prong of the analysis, i.e., that the right at issue was clearly established at

the time of the alleged violation." He maintains that there is no United States Supreme Court or Tenth Circuit decision that has held that the arrest of a protected person without probable cause for violation of a restraining order violates the Fourth Amendment. In support of this proposition, Officer Spellman relies on this Court's statement in *Medina v. City and County of Denver*, 960 F.2d 1493 (10th Cir. 1992), that "[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains." *Id.* at 1498. In *Hope v. Pelzer*, 536 U.S. 730 (2002), the Supreme Court held, however, that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has not previously been held unlawful.'" *Id.* at 741.

In *Casey v. City of Fed. Heights*, 509 F.3d 1278 (10th Cir. 2007), this Court observed that "there will almost never be a previously published opinion involving exactly the same circumstances. We cannot find qualified immunity wherever we have a new fact pattern." *Id.* at 1284. This Court further held that "[t]The *Hope* decision 'shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional.'" *Id.* (quoting *Gomez v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006)).

- 21 -

In *Fogarty v.Gallegos*, 523 F.3d 1147 (10th Cir. 2008), this Court held that "our circuit uses a sliding scale to determine when a law is clearly established. Under this approach, '[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.'" *Id.* at 1161 (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)) (alteration in original).

In *Saucier*, 533 U.S. at 202, the Supreme Court held that in determining whether an official is entitled to qualified immunity, once it is established that a constitutional right was violated, a trial court must determine whether the right was clearly established, i.e., "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

In deciding whether Officer Spellman is entitled to qualified immunity under the second *Saucier* requirement that the law must be clearly established, we must determine whether it would have been clear to a reasonable officer that the facts known to Officer Spellman did not constitute probable cause to arrest Ms. Shroff for violating the order restraining Mr. Kruse from coming within 100 yards of her. *See Beck v. Ohio*, 379 U.S. 89, 96 (1964) ("When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief that an offense has been committed.'") (quoting

*Carroll v. United States*, 267 U.S. 132 (1925)).

Officer Spellman did not arrest Ms. Shroff until he had interviewed her, her stepfather, and Mr. Kruse. Ms. Shroff complained to Officer Spellman that Mr. Kruse had parked his truck behind her automobile in the police station's parking lot in violation of the restraining order. Ms. Shroff provided Officer Spellman with a copy of the restraining order that had been issued against Mr. Kruse. It prohibits Mr. Kruse from contacting, harassing, stalking, injuring, intimidating, threatening, molesting, or placing her or her child in reasonable fear of bodily injury or coming within 100 yards of her. The restraining order authorizes law enforcement officials to arrest the restrained person for a violation of any provision of the order. It does not authorize the arrest of the protected person for giving the restrained person permission to change or ignore the order. Ms. Shroff pointed out to Officer Spellman that the restraining order was not reciprocal, that is, it did not restrain her from contacting, stalking, or molesting Mr. Kruse, or coming within 100 yards of him. Instead of arresting Mr. Kruse for parking his truck at the District 3 police station behind Ms. Shroff's automobile in clear violation of the express terms of the restraining order, Officer Spellman arrested Ms. Shroff.

Officer Spellman claims that he relied on the provision in the restraining order that a protected person cannot give a restrained person "permission to change or ignore this Order in any way." None of the persons interviewed by Officer

- 23 -

Spellman, however, including Mr. Kruse, stated that Ms. Shroff gave Mr. Kruse permission to come within 100 yards of her.

We are persuaded that under these undisputed circumstances, no reasonable officer would determine that he or she had probable cause to arrest Ms. Shroff after reading the restraining order and being informed that Ms. Shroff was not a restrained person. Accordingly, we conclude that Officer Spellman did not have arguable probable cause to arrest Ms. Shroff for a violation of the restraining order.

**VI**

Officer Spellman also seeks reversal of the district court's denial of his motion for summary judgment on the second count in Ms. Shroff's complaint. He contends that his conduct in ordering a female deputy to be present while Ms. Shroff exposed her breasts was not an unreasonable search in violation of the Fourth Amendment. Instead, Officer Spellman argues that he merely acquiesced in her request to use a breast pump.

Officer Spellman required Ms. Shroff to expose her breasts in front of a female cadet solely because she was a prisoner. As discussed above, Ms. Shroff had been arrested without probable cause under clearly established law. Therefore, but for the unlawful seizure of her person by Officer Spellman, she would not have been subjected to an invasion of her personal right not to be required to expose her breasts before another person.

In *Chapman v. Nichols*, 989 F.2d 393 (10th Cir. 1993), this court held that "[i]t is axiomatic that a strip search represents a serious intrusion upon personal rights." *Id.* at 395. "In a civilized society, one's anatomy is draped with constitutional protections." *United States v. Afanador*, 567 F.2d 1325, 1331 (5th Cir. 1978).

*In Bell v. Wolfish*, 441 U.S. 520 (1979), a case involving a search of body cavities in a prison facility, the Supreme Court instructed as follows:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.* at 559

In this matter, Officer Spellman has not demonstrated any justification for requiring Ms. Shroff to expose her breasts to a female cadet while she performed an essential bodily function in providing milk for her baby. He did not testify, for example, that she might attempt to escape without the presence of a female cadet. Obviously, if Officer Spellman was concerned that she might attempt to escape, he could have ordered a guard outside the conference room when she pumped her breasts.

Because Officer Spellman failed to present any justification for requiring Ms.

- 25 -

Shroff to expose her breasts in the presence of another person, we conclude that Officer Spellman violated Ms. Shroff's Fourth Amendment right to personal privacy by requiring her to expose her breasts after arresting her without probable cause.

## Conclusion

We AFFIRM the district court's order denying Officer Spellman's motion for summary judgment. The record viewed in the light most favorable to Ms. Shroff demonstrates that her Fourth Amendment rights to be free from an unlawful seizure and an unreasonable search that required a woman to expose her breasts were violated by Officer Spellman.