HARTZ, Circuit Judge.
Plaintiff Christopher Colbruno was in jail awaiting trial when he needed to be taken to the hospital for an urgent medical condition. Six deputies in the Denver Sheriff's Department (Defendants) walked him through the public areas of the hospital completely unclothed except for an orange pair of mittens. Complaining that the deputies violated his constitutional rights, he sued them, among others, under 42 U.S.C. § 1983.[1] Defendants moved to dismiss for failure to state a claim on the ground that they were entitled to qualified immunity. The district court disagreed, and Defendants appealed to this court. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. Plaintiff's complaint alleges facts supporting the inference that the public exposure of his naked body was wholly unjustifiable and therefore suffices to state a claim under the Fourteenth Amendment. Whether the evidence supports those allegations is a question for further proceedings.
I. BACKGROUND
Although the district court characterized its decision (which addressed a variety of issues in addition to qualified immunity)
*1160 as resolving motions for summary judgment, it is apparent from the record that the court resolved Defendants' qualified-immunity motion solely on the basis of allegations made in Plaintiff's complaint. We therefore consider this to be an appeal from the denial of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). On review we accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party. See Doe v. Woodard , 912 F.3d 1278, 1285 (10th Cir. 2019).
Plaintiff's complaint alleges the following: On May 4, 2015, he was a pretrial detainee in the custody of the Denver Sheriff's Department at the Van Cise-Simonet Detention Center. During an apparent psychotic episode, he swallowed metal components of an emergency call box in his jail cell. After jail officials learned of this at about 10:00 p.m., they contacted a physician at the Denver Health Medical Center and were told that he should be brought to the hospital for x rays and treatment within one hour. At 12:20 a.m., three of the Defendants removed him from his cell and placed him in a van to go to the hospital. On the way there, Plaintiff urinated and defecated on the smock he was wearing. The three transporting Defendants were met at the hospital by the other three Defendants. Defendants removed the smock and walked Plaintiff into the hospital without any clothes on except a pair of orange mittens, passing through the ambulance bay, entrance, atrium, and hallways before chaining him to a bed. Hospital staff witnessed this conduct and reported it to the hospital risk manager because they found it disturbing.
II. DISCUSSION
Defendants[2] have asserted the defense of qualified immunity, which "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Callahan v. Unified Gov't of Wyandotte Cty. , 806 F.3d 1022, 1026 (10th Cir. 2015) (internal quotation marks omitted). "Because qualified immunity establishes immunity from suit rather than a mere defense to liability, a district court's denial of a claim of qualified immunity is immediately appealable under 28 U.S.C. § 1291." Id. (internal quotation marks and citation omitted). But our jurisdiction in such an interlocutory appeal is limited to the legal question of whether the alleged facts state a violation of clearly established law. See id.
"In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that [Plaintiff] has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of [Defendants'] alleged misconduct." Keith v. Koerner , 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted). The law was "clearly established" if it "was sufficiently clear that every reasonable official would understand that what he is doing is unlawful."
*1161 District of Columbia v. Wesby , --- U.S. ----, 138 S. Ct. 577, 589, 199 L.Ed.2d 453 (2018) (internal quotation marks omitted); see id. at 590 ("The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." (internal quotation marks omitted)). Generally, "[t]he plaintiff must show there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Woodard , 912 F.3d at 1289 (internal quotation marks omitted). "Ultimately, we consider whether our precedents render the [il]legality of the conduct undebatable." Lowe v. Raemisch , 864 F.3d 1205, 1211 (10th Cir. 2017). Our review is de novo. See Keith , 707 F.3d at 1187.
A. Mistreatment of Detainees
Plaintiff asserts that Defendants' treatment of him violated the Fourth Amendment's protection against unreasonable seizures and the Fourteenth Amendment's Due Process Clause. To resolve what constitutional provision governs this case, we need to review the proper scope of the potentially applicable provisions. First, however, we should explain our nomenclature, because almost any federal constitutional claim against state officials is, strictly speaking, a claim under the Fourteenth Amendment. Although the provisions of the Bill of Rights are directed only to the federal government, see Barron v. City of Baltimore , 32 U.S. (7 Pet.) 243, 247, 8 L.Ed. 672 (1833), the Supreme Court over the years has incorporated most of those provisions into the Fourteenth Amendment, see Timbs v. Indiana , --- U.S. ----, 139 S. Ct. 682, 687, 203 L.Ed.2d 11 (2019) ("With only a handful of exceptions, this Court has held that the Fourteenth Amendment's Due Process Clause incorporates the protections contained in the Bill of Rights, rendering them applicable to the States." (internal quotation marks omitted)). Thus, even when dealing with state officials, it is common to say that a claim is based, say, on the First Amendment, Fourth Amendment, Sixth Amendment, or Eighth Amendment. We follow that practice here to add clarity to our discussion. When we speak of a Fourteenth Amendment claim in this opinion, we will be referring to a claim that is not based on incorporating the Bill of Rights into that amendment, but rather is based on the Due Process Clause in itself. We note, however, that courts analyze such claims against state officials essentially the same way as they analyze claims against federal officials under the Due Process Clause of the Fifth Amendment. See Ward v. Anderson , 494 F.3d 929, 932 n.3 (10th Cir. 2007) ("The Due Process Clause of the Fourteenth Amendment imposes no more stringent requirements upon state officials than does the Due Process Clause of the Fifth Amendment upon their federal counterparts." (brackets and internal quotation marks omitted)).
The essence of Plaintiff's claim is that he was mistreated while in state custody. Alleged mistreatment of this type may be challenged under the Fourth Amendment, Eighth Amendment, or Fourteenth Amendment. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Even one who has been properly searched or seized by police authorities (say, arrested on probable cause), can claim that the search or seizure was unreasonable because of unreasonable treatment by officers in effecting the search or seizure. Typically, the mistreatment has been the use of excessive force; but "the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy interests-a person's *1162 sense of security and individual dignity." Holland ex rel. Overdorff v. Harrington , 268 F.3d 1179, 1195 (10th Cir. 2001) (internal quotation marks omitted) (abusive conduct of SWAT team while holding residents at gunpoint during execution of search and arrest warrants).
The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. It applies to those who have been convicted of crime, so they usually cannot complain of confinement itself. But see Hawkins v. Hargett , 200 F.3d 1279, 1282 (10th Cir. 1999) (Eighth Amendment protects against sentence that is grossly disproportionate to the offense). It does, however, protect against unjustifiable conditions of confinement, such as "the unnecessary and wanton infliction of pain," Hudson v. McMillian , 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (internal quotation marks omitted), or deliberate indifference to an excessive risk to a prisoner's health, see Farmer v. Brennan , 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). When a prisoner challenges a particular use of force by prison officials, the prisoner can establish an unnecessary and wanton infliction of pain by showing that the action was taken "maliciously and sadistically to cause harm." Hudson , 503 U.S. at 7, 112 S.Ct. 995. We have held that psychological harm, as well as physical injury, can implicate the Eighth Amendment. See Benefield v. McDowall , 241 F.3d 1267, 1272 (10th Cir. 2001) ; see also Hudson , 503 U.S. at 16, 112 S.Ct. 995 (Blackmun, J., concurring in the judgment) ("It is not hard to imagine inflictions of psychological harm-without corresponding physical harm-that might prove to be cruel and unusual punishment.")
For those in pretrial confinement, such as Plaintiff, claims regarding mistreatment while in custody generally do not come within the protection of the Fourth Amendment or the Eighth Amendment. As explained in Porro v. Barnes , 624 F.3d 1322, 1325-26 (10th Cir. 2010) (Gorsuch, J.), "[T]he Fourth Amendment ... pertains to the events leading up to and including an arrest of a citizen previously at liberty," while the Eighth Amendment is the source of protection for "prisoners already convicted of a crime who claim that their punishments involve excessive force." Thus, when a "plaintiff finds himself in the criminal justice system somewhere between the two stools of an initial seizure and post-conviction punishment[,] we turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities" to evaluate claims of mistreatment. Id . at 1326. That is Plaintiff's situation, so we assess his claim under the Fourteenth Amendment. See Fisher v. Washington Metro. Area Transit Auth. , 690 F.2d 1133, 1142 (4th Cir. 1982) (assessing under the Fourteenth Amendment a pretrial detainee's claim of unwarranted forced nudity), abrogated on other grounds by Cty. Of Riverside v. McLaughlin , 500 U.S. 44, 50, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).
Although the full scope of protection provided by the Due Process Clauses to pretrial detainees may be to some extent uncertain, the Supreme Court has been categorical in one respect: "[A] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish , 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (emphasis added). Thus, in analyzing a condition of pretrial confinement, "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Id . at 538, 99 S.Ct. 1861. "Absent a showing of an expressed intent to punish *1163 on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it." Id . (brackets and internal quotation marks omitted). "[I]f a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." Id . at 539, 99 S.Ct. 1861.
We applied those principles to a claim of excessive force in Blackmon v. Sutton , 734 F.3d 1237 (10th Cir. 2013) (Gorsuch, J.). An 11-year-old pretrial detainee claimed that detention-center officials had unconstitutionally punished him by repeatedly placing him in a restraint chair (and in one instance by having a guard sit on his chest) without any legitimate penological purpose. See id . at 1242-43. We held that these would be Fourteenth Amendment violations. See id . at 1240-44. We explained that a pretrial detainee can establish that official actions constitute unconstitutional punishment either by showing that "an expressed intent to punish on the part of detention facility officials exists," or "by showing that the restriction in question bears no reasonable relationship to any legitimate governmental objective." Id. at 1241.
Bell and Blackmon are not entirely clear about whether a pretrial detainee could sustain a due-process claim for mistreatment without showing that the custodians intended their actions as punishment. Both opinions could be read as requiring an intent to punish the pretrial detainee although allowing such intent to be inferred from the absence of a legitimate purpose behind the offensive conduct. See Kingsley v. Hendrickson , --- U.S. ----, 135 S. Ct. 2466, 2477-78, 192 L.Ed.2d 416 (2015) (Scalia, J., dissenting) (discussing Bell ). But the Supreme Court in Kingsley eliminated any ambiguity. Reviewing a claim of excessive force brought by a pretrial detainee, the Court declined to read Bell as meaning "that proof of intent (or motive) to punish is required for a pretrial detainee to prevail on a claim that his due process rights were violated." Id . at 2473. Rather, a pretrial detainee can establish a due-process violation by "providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." Id . at 2473-74.[3] In particular, there is no subjective element of an excessive-force claim brought by a pretrial detainee. See id. at 2476.
B. Public Exposure of Nude Body of Detainee
In our view, any reasonable adult in our society would understand that the involuntary exposure of an adult's nude body is a significant imposition on the victim. And law-enforcement officers in this circuit have been taught this lesson repeatedly. In Shroff v. Spellman , 604 F.3d 1179, 1184 (10th Cir. 2010), the plaintiff had been placed in a holding cell after her arrest, awaiting transfer to the city jail. She told the arresting officer that she needed to pump breastmilk to be used by her infant child in her absence. See id. He required her to do so under the observation of a female cadet, even though she could have been afforded privacy in a room with a guard outside. See id. at 1191. We held *1164 that the officer had violated the Fourth Amendment, because he had "not demonstrated any justification for requiring [the plaintiff] to expose her breasts to a female cadet while she performed an essential bodily function in providing milk for her baby." Id. ; see May v. City of Nahunta, Geo. , 846 F.3d 1320, 1331 (11th Cir. 2017) (woman subject to mental-health detention forced to disrobe in presence of male officer); see also Los Angeles Cty., Cal. v. Rettele , 550 U.S. 609, 615, 127 S.Ct. 1989, 167 L.Ed.2d 974 (2007) (in holding that officers did not act improperly in executing search warrant, Court notes that officers did not delay detainees from putting on clothes "longer than necessary to protect their safety").
Similarly, in Hill v. Bogans , 735 F.2d 391, 393 (10th Cir. 1984), a man arrested on a bench warrant for traffic violations was forced to "drop his pants and undershorts" as part of the booking process in a jail's "lobby area where he observed ten to twelve people in the immediate vicinity." We held that his Fourth Amendment rights had been violated because the search was unnecessary to discover contraband or weapons, and took place in front of multiple people in a public area. See id . at 394-95.
We have recognized the significance of such an imposition even on prisoners after they have been convicted and are serving time in prison. In Farmer v. Perrill , 288 F.3d 1254, 1257 (10th Cir. 2002), a female inmate challenged a prison's alleged policy of requiring a "visual search" of inmates' naked bodies in view of other inmates after trips to the prison yard. We held that she had "the right not to be subjected to a humiliating strip search in full view of several (or perhaps many) others unless the procedure is reasonably related to a legitimate penological interest." Id . at 1260 (emphasis omitted). It appears, although it is not certain, that our decision in that case relied on the Fourth Amendment; but several other circuits have recognized that officials can violate the Eighth Amendment by forcing inmates to expose their naked bodies for the purpose of humiliation. See Calhoun v. DeTella , 319 F.3d 936, 939 (7th Cir. 2003) ; Kent v. Johnson , 821 F.2d 1220, 1227-28 (6th Cir. 1987) ; Lee v. Downs , 641 F.2d 1117, 1119 (4th Cir. 1981). And in Cumbey v. Meachum , 684 F.2d 712, 713 (10th Cir. 1982), we considered a prisoner's complaint that his constitutional rights had been violated because female prison guards "are assigned to posts where they observe[d] him dressing and undressing and using the toilet and the shower." We held that the complaint was improperly dismissed as frivolous, saying that "[a]lthough the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether." Id . at 714. We did not reference any particular provision of the Constitution.
All we need to take from these cases is a conclusion that was obvious without them: exposing a person's naked body involuntarily is a severe invasion of personal privacy. The conclusion that Defendants' alleged conduct constituted a violation of the Fourteenth Amendment readily follows. The only issue is whether the exposure of Plaintiff's body was "not rationally related to a legitimate governmental objective or [was] excessive in relation to that purpose." Kingsley , 135 S. Ct. at 2473-74. In our view, the facts alleged in the Complaint satisfy this condition.
Defendants argue that Plaintiff needed medical treatment urgently, and that finding another covering for him before transporting him through the hospital would have taken too much additional time and effort. But Plaintiff has alleged facts supporting the reasonable inference that no vital urgency justified Defendants' actions.
*1165 His complaint states that Defendants took more than two hours to transport him to the hospital. It also alleges that at the end of his walk through the hospital he was chained to a hospital bed, not immediately x-rayed or provided with treatment. The district court ruled that these allegations were sufficient to support the inference that Plaintiff's condition was not so urgent that Defendants could not have delayed walking him into the hospital for "[t]he additional moment that would have been required to locate and place a smock" on him. District Court Order at 17. We agree with the district court. It is common sense that acquiring some replacement clothing at a hospital would be at most a matter of minutes, and we can reasonably infer from the long delay in transporting Plaintiff that Defendants' actions were not based on a medical need so pressing that they could not spare a little time to obtain a dignified covering.
C. Qualified Immunity
There remains the question whether Defendants are entitled to qualified immunity. Was the law clearly established that their conduct (as alleged by Plaintiff) violated the Fourteenth Amendment? Ordinarily the answer is no unless there is precedent of the Supreme Court or of this court declaring that there would be a violation under closely similar facts. Fortunately, however, not every constitutional violation has factual antecedents. We can occasionally rely on the general proposition that it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted ... even though existing precedent does not address similar circumstances." Wesby , 138 S. Ct. at 590 (internal quotation marks omitted); see Lowe , 864 F.3d at 1210-11 ("[T]he constitutional violation may be so obvious that similar conduct seldom arises in our cases," and "it would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt." (internal quotation marks omitted)). We must be careful not to do so when there are any relevant ambiguities, such as whether physical force is justified for a particular purpose or in a particular context, see Aldaba v. Pickens , 844 F.3d 870, 879 (10th Cir. 2016) (use of taser to subdue person needing medical care), or whether force used constituted deadly force, see Thomson v. Salt Lake County , 584 F.3d 1304, 1315-17 (10th Cir. 2009) (whether use of police dog constituted deadly force); Wilson v. City of Lafayette , 510 F. App'x 775, 778 (10th Cir. 2013) (Gorsuch, J.) (whether tasing amounted to use of deadly force). Here, however, there are no relevant ambiguities regarding the manner in which Defendants allegedly took Plaintiff from the police vehicle to his hospital room.
The Fourteenth Amendment is violated if a pretrial detainee is subjected to "a restriction or condition ... not reasonably related to a legitimate goal." Bell , 441 U.S. at 539, 99 S.Ct. 1861 ; see Kingsley , 135 S. Ct. at 2473-74. To be sure, some restrictions or conditions may be too insignificant to be the predicate for a Fourteenth Amendment violation. But common sense tells us that parading someone nude in public is not so insignificant, and the above-referenced Fourth Amendment jurisprudence makes the point crystal clear. We therefore proceed as we did in Blackmon . As previously noted, that case involved a juvenile pretrial detainee. The evidence supported the inference that on occasion the plaintiff had been shackled to a restraint chair "for long stretches when there was no hint he posed a threat of harming himself or anyone else." Blackmon , 734 F.3d at 1242. Further, on one occasion he "was stripped out of his clothes and forced to wear a paper gown *1166 while restrained in the chair," id ., and on another a corrections worker sat on him "without any penological purpose," id . at 1243. Even in the absence of any precedential opinions holding that there had been a Fourteenth Amendment violation under similar facts, we denied qualified immunity, saying: "On the frugal record we have, we (like the district court before us) are again left unable to exclude the possibility that a defendant used force against Mr. Blackmon as punishment. And that is enough to preclude granting qualified immunity at summary judgment under Bell 's plain terms." Id . at 1244. Bell in itself sufficed as clearly established law in that context. There is little subtlety in a standard requiring merely a rational relationship to a legitimate objective. In our view, Bell suffices here as well, particularly given the additional precedential authority of Blackmon .
On one possible aspect of Plaintiff's claim, however, we do not think Defendants' actions were governed by clearly established law. To the extent that Plaintiff claims that his constitutional rights were violated by being chained in the hospital bed to which he was taken, we dismiss the claim as barred by qualified immunity. Given Plaintiff's status as one facing criminal charges, and the apparent risk he posed to himself, there was certainly a legitimate purpose for the constraints. Also, his nude body was presumably then exposed only to his hospital caregivers, who could best determine what, if any, garb or covering was appropriate for his treatment and care. Given the much more limited nature of Plaintiff's exposure, the legitimate reasons for the restraint, and the change in caretaker upon Plaintiff's delivery to the room, it is not obvious that Defendants denied him due process in the manner that they left him in the hospital bed.
III. CONCLUSION
We AFFIRM the denial of qualified immunity except to the extent that Plaintiff's claim is based on his treatment after being taken to his hospital room.

Section 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation," so "we must examine the allegations in the complaint as to each individual appellant to determine whether a plausible claim for relief is stated." Wilson v. Montano , 715 F.3d 847, 854 (10th Cir. 2013) (internal quotation marks omitted). But because Plaintiff alleges that all six Defendants participated equally in walking him into the hospital without clothes on, and Defendants make no argument that they are differently situated with regard to liability, we will treat them all the same for purposes of this appeal. See Estate of Booker v. Gomez , 745 F.3d 405, 421-22 (10th Cir. 2014). Of course, evidence developed upon remand may make distinctions among them appropriate.

The dissent argues that the proper approach to Fourteenth Amendment claims against executive action would be to determine whether the action shocks the conscience. Kingsley , however, is to the contrary for claims relating to the treatment of pretrial detainees.