GRASZ, Circuit Judge, dissenting.
 

 There is an old adage that "bad facts make bad law."
 
 Colbruno v. Kessler
 
 ,
 
 928 F.3d 1155
 
 (10th Cir. 2019) (Tymkovich, C.J., dissenting). Likewise, a litigation strategy can result in bad law leading to unforeseen consequences. I fear that may be the case here. For whatever reason, the Fox addressed only the question of meaningful access and failed to assert an undue burden defense at the summary judgment stage, even though the Fox says the cost of providing an in-person captioner at each performance is substantial. This has resulted in a decision that could undercut the meaningful access precedent of this circuit.
 
 See, e.g.
 
 ,
 
 Argenyi v. Creighton Univ.
 
 ,
 
 703 F.3d 441
 
 , 449 (8th Cir. 2013).
 

 Under the meaningful access standard, "aids and services 'are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons,' but they nevertheless 'must afford handicapped persons equal opportunity to ... gain the same benefit.' "
 

 Id.
 

 at 449
 
 (alteration in original) (quoting
 
 Loye v. Cty. of Dakota
 
 ,
 
 625 F.3d 494
 
 , 499 (8th Cir. 2010) ). While the ADA is broad in scope, the law does not require institutions to provide all requested auxiliary aids and services but instead only "necessary" ones.
 

 Id.
 

 The law tests what level of provision of necessary aids and services is required for meaningful access without reaching the affirmative defenses.
 
 See
 

 Loye
 
 ,
 
 625 F.3d at 499
 
 . This is an "inherently fact-intensive" inquiry that "largely depends on context."
 
 See
 

 Argenyi
 
 ,
 
 703 F.3d at 449
 
 (quoting
 
 Liese v. Indian River Cty. Hosp. Dist.
 
 ,
 
 701 F.3d 334
 
 , 343 (11th Cir. 2012) ).
 

 Here, the Fox originally provided its hearing-impaired patrons with an American Sign Language interpreter. And then, after litigation ensued, the Fox provided Childress with the specific accommodation she asked for, live captioning at one showing of each requested production. When Childress requested live captioning at a different showing, the Fox provided captioning at her requested showing. In fact, since their original compromise was reached, there is no evidence that any of the plaintiffs have been denied captioning at a requested showing.
 

 Yet the court concludes that, although the Fox provides real time captioning from a live, in-person court reporter for at least one performance of every production at its theater and has demonstrated a willingness to work with patrons to accommodate requests for alternative dates, it must instead provide this service at
 
 every
 
 performance of every production in order to provide meaningful access. Childress expressly argued, and the court seemingly agrees, the Fox has no ability to limit the frequency of the live captioning services it provides. In my view, this conclusion effectively replaces the meaningful access test with an identical access standard. I also believe this conclusion improperly cabins arguments about what access qualifies as meaningful to the context of affirmative defenses even though the defenses test whether the auxiliary aid or service must be provided at all, not what level of access is meaningful.
 
 See, e.g.
 
 ,
 

 id.
 

 at 451 n.3. It is the meaningful access analysis, not the undue burden standard, that determines whether it is necessary to provide a court reporter at every performance.
 

 Fortunately for all concerned, advanced technology appears poised to moot this issue as a practical matter by making real time captioning of live performances inexpensive and routine. This does not, however, negate the legal problem. A legal standard requiring identical access in the context of auxiliary aids and services may have far-reaching unforeseen consequences in other contexts. Identical access would possibly require, for example, 24/7
 sign language translation in hospitals as well as a myriad of other requirements. Such a result is not consistent with our meaningful access precedent.
 
 See
 

 Loye
 
 ,
 
 625 F.3d at 499
 
 (affirming district court's opinion rejecting the contention that "an interpreter is mandated for every meeting"). The benefit the Fox offers is the opportunity to attend traveling Broadway productions. Access to this benefit does not require live court reporters at each and every performance of every production in order to be meaningful.
 

 I respectfully dissent.