**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 14, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

BRITTNEY BROWN,

     Plaintiff - Appellee,

v.

ROGER FLOWERS,

     Defendant - Appellant,

and

JOHN CHRISTIAN, Pontotoc County
Sheriff; MIKE SINNETT,

     Defendants.

No. 19-7011

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:17-CV-00347-RAW)**
_____

Charles A. Schreck, Pierce Couch Hendrickson Baysinger & Green, LLP, Oklahoma
City, Oklahoma (Robert S. Lafferrandre and Randall J. Wood with him on the brief), for
Appellant.

Stephen J. Capron, Capron & Edwards, PLLC, Tulsa, Oklahoma, for Appellee.
_____

Before **BACHARACH**, **MURPHY**, and **MORITZ**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

Brittney Brown brought this 42 U.S.C. § 1983 case against Roger Flowers, who at the time was a jailer at the Pontotoc County Justice Center, alleging that he raped her while she was a pretrial detainee. Flowers sought summary judgment, arguing that sex between him and Brown was consensual and that, regardless, he was entitled to qualified immunity. The district court determined that a jury could find that Flowers had coercive, nonconsensual sex with Brown and that such conduct would have violated her clearly established rights. Accordingly, it denied Flowers's motion. Flowers appeals from this order. He first argues that the district court erred in finding that the question of consent and coercion was a jury question and that it therefore erred in finding a constitutional violation. But on this interlocutory appeal, we generally must accept the facts as the district court found them and therefore do not have jurisdiction to consider this argument. Flowers next argues that clearly established law did not put him on notice that the sex was coercive or nonconsensual. Because we find our existing caselaw on the sexual abuse of inmates clearly established the contours of Brown's rights, we affirm the denial of qualified immunity.

**Background**

In March 2016, Brown was a pretrial detainee at the Pontotoc County Justice Center, where Flowers worked as a jailer.[1] Flowers could communicate with

---

[1] As explained in detail below, our jurisdiction is limited to questions of law. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1153–54 (10th Cir. 2008). We therefore recount "the facts found by the district court and those that it likely assumed." *Id.* at 1158.

residents of the pod where Brown was housed over an intercom and see them over video. On March 20, 2016, Flowers used the intercom system to tell Brown to come see him in the control tower, telling her "to hurry." App. vol. 5, 555. Brown felt that she had to comply with Flowers's orders because she was in jail and "ha[d] to do what [she was] told." *Id.* at 569. She felt that jailers "have control of your whole entire life," including "what you get, what you don't get, when you get to do anything, everything." *Id.* After she entered the control tower, Flowers said to Brown, "let me see your titties" and "he lifted [Brown's] shirt up." *Id* at 556. Flowers then began having sex with Brown. Brown began crying, which caused Flowers to turn Brown around so that he could penetrate her from behind. Brown explained that she did not physically resist because Flowers was "a guard and [she was] an inmate" and so if she used physical force to resist Flowers, that resistance could result in charges against her. *Id.* at 557.

After the incident, Flowers gave Brown cigarettes. Brown requested a "rape kit" from the jail nurse, and she told her sister, biological mother, and adoptive mother that she was "raped." *Id.* at 561, 564–65. A similar incident occurred a week later. Flowers later pleaded guilty in Oklahoma state court to two counts of second-degree rape under an Oklahoma statute that defines sex between a guard and a prisoner as rape. *See* Okla. Stat. Ann. tit. 21, § 1111(7).

Brown then filed this § 1983 action in federal district court. Relevant here, she alleged that Flowers raped her while in custody in violation of her constitutional rights. Flowers moved for summary judgment, arguing that he did not violate

3

Brown's constitutional rights because Brown consented and that, regardless, he was entitled to qualified immunity. The district court first noted that Flowers's "guilty plea to two counts of second-degree rape is not dispositive," explaining that Flowers's criminal offense did not include coercion as an element. App. vol. 1, 106 (emphasis omitted). The district court next found that, here, "consent and coercion are issues for the fact[]finder in this case." *Id.* at 108. And the district court determined if there was coercion, it did "not involve any use of physical force." *Id.* at 111. Instead, the district court emphasized the inherently coercive nature of the prison setting. It further explained that because Flowers gave Brown cigarettes, there may have been "some quid pro quo" that affected Brown's actions. *Id.* at 107. The district court also credited Brown's testimony, including that "she told family members after the first incident that she was forced to have sex with [Flowers]." *Id.* at 104. Because the district court found that whether Brown consented is a question of fact, it determined that a jury could find that Flowers sexually abused Brown. And because "using excessive force against prisoners in the form of sexual abuse" violates the Constitution, the district court concluded that Flowers violated Brown's constitutional rights. *Id.* at 108 (quoting *Smith v. Cochran*, 339 F.3d 1205, 1215 (10th Cir. 2003)).

Next, the district court addressed Flowers's argument that he was entitled to qualified immunity because "he believed the sexual activity was consensual." *Id.* at 108–09. The district court criticized this argument as "conflat[ing]" the "factual question" of consent "with a legal one." *Id.* at 109. And it held that, because it is

4

clearly established that sexual abuse—including nonconsensual, coerced sex—violates the Constitution, Flowers violated a clearly established right. Thus, the district court found that Flowers was not entitled to qualified immunity and denied his motion for summary judgment.

## Analysis

On appeal, Flowers argues that the district court erred in finding a constitutional violation and in finding Brown's right clearly established. Flowers also moves to seal a portion of the record.

## I.  Qualified Immunity

When reviewing a summary-judgment order denying qualified immunity, "[w]e review the district court's grant of summary judgment de novo, employing the same legal standard applicable in the district court." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1311 (10th Cir. 2009). Under that standard, we must grant Flowers qualified immunity unless "(1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of [Flowers's] conduct." *Henderson v. Glanz*, 813 F.3d 938, 952 (10th Cir. 2015).

Given the procedural posture of this case, we have jurisdiction to review "abstract issues of law" but not the "district court's factual conclusions." *Fancher v. Barrientos*, 723 F.3d 1191, 1198–99 (10th Cir. 2013) (second quoting *Fogarty*, 523 F.3d at 1154). Here, the district court determined that "consent and coercion are issues for the fact[]finder in this case." App. vol. 1, 108. And, even on Flowers's appeal from a denial of qualified immunity, we "view the facts in the light most

5

favorable to [Brown] and resolve all factual disputes and reasonable inferences in [her] favor." *Henderson*, 813 F.3d at 952. Thus, for purposes of this appeal, we must assume that the sex was coerced and nonconsensual. Moreover, "[w]hen the factual and legal inquiries blur because the district court fails to make its factual assumptions explicit," we review the record to determine which facts "the district court 'likely assumed.'" *Fogarty*, 523 F.3d at 1154 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)). Therefore, "[t]hose facts explicitly found by the district court, combined with those that it likely assumed, . . . form the universe of facts upon which we base our legal review of whether [Flowers is] entitled to qualified immunity." *Id.*; *see also Henderson*, 813 F.3d at 949–50 (assuming fact that district court did not explicitly find because fact supported district court's conclusion to deny summary judgment based on qualified immunity and was construed in light most favorable to nonmoving plaintiff).

### A. Constitutional Violation

On appeal, Flowers argues that the district court erred in finding a constitutional violation. As a preliminary matter, we note that because Brown was a pretrial detainee, she was protected by the Fourteenth Amendment. *See Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019). And although the district court stated as much, it analyzed her claim as an Eighth Amendment violation. As such, it considered both prongs of the Eighth Amendment test: the objective component, or whether "the alleged wrongdoing was objectively harmful enough," and the subjective component, or whether "the officials act[ed] with a sufficiently culpable

state of mind." *Smith*, 339 F.3d at 1212 (alteration in original) (quoting *Giron v. Corr. Corp. of America*, 191 F.3d 1281, 1289 (10th Cir. 1999)). And on appeal, the parties likewise consider both prongs.

Such an analysis is in line with our previous statement that the Eighth and Fourteenth Amendment analyses are "identical." *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999). But this statement is no longer good law after the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). There, the Court held that "the appropriate standard for a pretrial detainee's excessive[-]force claim is solely an objective one" and that therefore "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley*, 135 S. Ct. at 2473–74; *see also Colbruno*, 928 F.3d at 1163 ("[T]here is no subjective element of an excessive-force claim brought by a pretrial detainee."). And because we "treat sexual abuse of prisoners as a species of excessive-force claim," *Graham v. Sheriff of Logan Cnty.*, 741 F.3d 1118, 1126 (10th Cir. 2013), after *Kingsley*, a pretrial detainee bringing such claim is not required to meet the "subjective element" required of Eighth Amendment excessive-force claims, *Colbruno*, 928 F.3d at 1163. Thus, to make out a constitutional violation, Brown must only demonstrate that Flowers's conduct "was objectively

7

harmful enough to establish a constitutional violation." *Smith*, 339 F.3d at 1212. (quoting *Giron*, 191 F.3d at 1289).[2]

In making this demonstration, Brown cites to our longstanding precedent indicating that "[w]ith regard to . . . sexual assault claims, . . . an 'inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993)); *see also, e.g.*, *Giron*, 191 F.3d at 1290 (finding that "sexual abuse" and "rape" by guard violates Constitution); *Castillo v. Day*, 790 F.3d 1013, 1020 (10th Cir. 2015) (acknowledging that "sexual abuse" by guard violates Constitution). Thus, Flowers's nonconsensual, coerced sex with Brown violated her constitutional rights. *See, e.g.*, *Giron*, 191 F.3d at 1290.

Relying on *Graham v. Sheriff of Logan County*, Flowers asserts that the district court erred in finding that "consent and coercion are issues for the fact[]finder in this case." App. vol. 1, 108. In *Graham*, we determined that guards who had sex

---

[2] Brown's briefing treats the analysis of an Eighth Amendment claim as identical to the analysis of a Fourteenth Amendment claim. As such, she does not argue that, in the context of sexual abuse by prison guards, the objective standard of the Fourteenth Amendment is meaningfully different than the objective standard of the Eighth Amendment. *Compare*, *Kingsley*, 135 S. Ct. at 2473–74 (describing the Fourteenth Amendment standard as whether there is "objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose"), *with Smith*, 339 F.3d at 1212 (describing the objective prong of the Eighth Amendment standard as whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation" (quoting *Giron*, 191 F.3d at 1289)). But because, as explained below, we affirm the district court by relying on Eighth Amendment cases, our analysis does not require us to resolve this issue here.

with an inmate did not violate her constitutional rights because there was "overwhelming evidence of consent." *Graham*, 741 F.3d at 1126. Flowers analogizes the facts here to those in *Graham* and contends that the undisputed facts here show that, as in *Graham*, there was "overwhelming evidence of consent." Aplt. Br. 46 (quoting *Graham*, 741 F.3d at 1126). In doing so, he insists that we have jurisdiction to consider this argument, claiming that it does not call for a "reconsideration of the [d]istrict [c]ourt's factual findings." Rep. Br. 2. But the district court found that a jury could find that the sex was coerced and nonconsensual. And, when considering this interlocutory appeal, "we are not at liberty to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide."[3] *Fogarty*, 523 F.3d at 1154; *see also Sawyers v. Norton*, 962 F.3d 1270, 1284 (10th Cir. 2020) (reasoning that "[a]lthough the [defendants] attempt to frame [their] argument as a legal issue, they challenge the district court's factual determination of what a reasonable jury could infer"; concluding that it lacked jurisdiction to review); *Cox v. Glanz*, 800 F.3d 1231, 1242 (10th Cir. 2015) ("When the [d]istrict [c]ourt 'concludes that a reasonable jury could find certain specified facts in favor of the plaintiff, . . . we usually must take them as true—and do so even if our own de novo review of the record might suggest otherwise as a matter of

---

[3] Although we have jurisdiction to review the district court's factual conclusions de novo where they are "blatantly contradicted by the record," Flowers does not make this argument. *Lewis*, 604 F.3d at 1226 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Further, we note that the district court explicitly found that the record did not "blatantly contradict[]" Brown's construction of facts. App. vol. 1, 105 (quoting *Scott*, 550 U.S. at 380).

9

law . . . .'" (third alteration in original) (quoting *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir.2010))). Thus, we lack jurisdiction to consider Flowers's argument, and we affirm the district court's conclusion that a reasonable jury could find facts supporting Brown's claim that Flowers violated her constitutional rights.

### B.    Clearly Established Law

Flowers next argues that Brown failed to demonstrate that he violated a clearly established right. A right can be clearly established through a factually similar "Supreme Court or published Tenth Circuit decision," or through "the clearly established weight of authority from other courts." *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018) (quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015)). Although we may "not . . . define clearly established law at a high level of generality," "a case directly on point" is not required. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741, 742 (2011)). Instead, "[t]he precedent must be *clear enough* that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia. v. Wesby*, 138 S. Ct. 577, 590 (2018) (emphasis added); *see also Mullenix*, 136 S. Ct. at 308 (explaining that right must be "*sufficiently clear* that every reasonable official would have understood that what he [or she] is doing violates that right" (emphasis added)); *cf. Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question.").

10

To determine whether a right is defined with sufficient specificity, we consider the "specific context of the case." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)). In some cases—such as those "in the Fourth Amendment [excessive-force] context" dealing with the "hazy border between excessive and acceptable force"—"specificity is especially important." *Mullenix*, 136 S. Ct. at 308, 312 (second quoting *Brosseau*, 543 U.S. at 201); *see also A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1199 (10th Cir. 2019) (explaining "concern" animating need for specificity "is particularly acute in Fourth Amendment cases"; finding that more specific case was not needed to establish equal-protection right). In other cases, a "general rule" will result in "law [that] is not extremely abstract or imprecise under the facts [of the case], but rather is relatively straightforward and not difficult to apply." *A.N.*, 928 F.3d at 1199.

Here, Brown again cites to our longstanding precedent establishing that sexual abuse of those in jail or prison violates the Constitution. *See, e.g.*, *Giron*, 191 F.3d at 1290. These cases involve similar types of abuse, including nonconsensual sex. *See, e.g.*, *id.* And notably, these cases do not delineate between sexual abuse carried out through physical and nonphysical coercion.[4] *See, e.g.*, *Castillo*, 790 F.3d at 1016,

---

[4] We note that, on appeal, these cases involve allegations that defendants were deliberately indifferent to sexual abuse and not that the defendants themselves committed sexual abuse. *See Castillo v. Day*, 790 F.3d 1013, 1015 (10th Cir. 2015); *Barney*, 143 F.3d at 1308, 1310. Nevertheless, these cases are relevant here because they support the broader proposition for which we rely on them: our caselaw does not

11

1022 (finding constitutional violation based on sexual abuse carried out through both physical and nonphysical coercion without differentiating between the two); *Barney*, 143 F.3d at 1304, 1310 (finding jailer's conduct, which included sexual abuse where jailer "threatened to keep [inmate] in jail longer" if she did not comply, "sufficiently serious to constitute a violation under the Eighth Amendment"). Brown also cites to *Graham*, which explained that "we think it proper to treat sexual abuse of prisoners as a species of excessive-force claim, requiring at least some form of coercion (*not necessarily physical*) by the prisoner's custodians." 741 F.3d at 1126 (emphasis added).

Flowers argues that both Brown and the district court define the right at issue at too high of a level of generality. He concedes that "Brown obviously had a constitutional right to be free from sexual abuse while in state custody." Aplt. Br. 25. But he contends that her right was not clearly established here because there is no case on point to inform him that the sex under these particular circumstances was nonconsensual and that therefore a reasonable officer in his position would not know that this conduct amounted to sexual abuse. In doing so, however, Flowers misunderstands both the facts as we must construe them and our caselaw.

Flowers asserts that "the issue is whether [he] should have known that subtle, nebulous forms of non-physical coercion before or after sexual intercourse with Brown (giving cigarettes) violated her constitutional rights, even when everything

draw a constitutionally relevant line between sexual abuse of inmates carried out through physical coercion and that carried out through nonphysical coercion.

12

else suggested that she had consented to intercourse with him." Aplt. Br. 24–25. But framing the issue in this manner mischaracterizes the facts that the district court found or "likely assumed" in determining that coercion and consent are jury questions. *Fogarty*, 523 F.3d at 1154 (quoting *Behrens*, 516 U.S. at 313). Flowers's framing assumes that the district court found coercion and lack of consent based on only his "gift of cigarettes." Aplt. Br. 25. It is true that the district court order explained that the cigarettes could have created coercion in the form of a quid pro quo. But, as Brown points out, the district court also relied on her testimony, and she testified the sex was not consensual and that afterward, she told her family she had been "raped." App. vol 5, 564–65. Moreover, the district court emphasized that "[t]he power dynamics between prisoners and guards make it difficult to discern consent from coercion." App. vol. 1, 103 (alteration in original) (quoting *Graham*, 741 F.3d at 1126). Indeed, Brown's testimony reflects the role this power dynamic played here. For example, Brown explained that she went to the control tower because she was in jail and "had to do what [she] was told." App. vol. 5, 566. Further, Brown began crying while Flowers was penetrating her, causing Flowers to turn her around. Thus, based on how we must construe the facts in this interlocutory appeal, there was more than "subtle" and "nebulous" coercion here, and, contrary to Flowers's argument, it is not the case that "everything else suggested that [Brown] had consented to intercourse with [Flowers]." Aplt. Br. 24–25. Therefore, Flowers's contention that Brown fails to "identify a single case that discusses a jailer's 'gift' to an inmate after sexual activity" does not doom Brown's case. Rep. Br. 10.

13

In addition to misconstruing the facts, Flowers's argument also misunderstands our caselaw. He asserts that "the case[]law on 'not necessarily physical[ly coercive]' sexual relations between inmates and jailers is not the same as the law governing forceful rape." Aplt. Br. 33–34 (citation omitted) (quoting *Graham*, 741 F.3d at 1126). But, as discussed above, our caselaw does not make a distinction between sexual abuse carried out through physical and nonphysical coercion. And we confirmed this principle in *Smith v. Cochran*. There, we found a constitutional violation for sexual abuse and rape where a state employee who "acted as the functional equivalent of a prison guard" told an inmate that "if she did not have sex with him[,] he would report her misconduct." *Smith*, 339 F.3d at 1209, 1216. Thus, our existing caselaw on sexual abuse of inmates is relevant and defines the contours of Brown's rights.

Flowers also critiques Brown's reliance on *Graham*. He argues that because it established that consensual sex does not violate the Constitution, *Graham* includes "conduct that does not necessarily violate an inmate's rights." Aplt. Br. 27. And therefore, he maintains, *Graham* does not put officers on notice of conduct that *does* violate an inmate's rights. He acknowledges *Graham*'s statement that prisoners' sexual-abuse claims "requir[e] at least some form of coercion (*not necessarily physical*) by the prisoner's custodians." 741 F.3d at 1126 (emphasis added). But he suggests that this description of "'not necessarily physical' [coercion] refers to conduct that *might* violate an inmate's rights in a future case," and that it is therefore dicta and cannot control the outcome in this case. Aplt. Br. 27 (quoting *Graham*, 741

14

F.3d at 1126). True, *Graham* did determine that consent is a defense to a constitutional claim for sexual abuse. 741 F.3d at 1125–26. But it also granted summary judgment only after finding "overwhelming evidence of consent," including the plaintiff's testimony. *Id.* at 1126. In doing so, *Graham* explained that "[t]he power dynamics between prisoners and guards make it difficult to discern consent from coercion." *Id.* at 1126 (alteration in original) (quoting *Wood v. Beauclair*, 692 F.3d 1041, 1047 (9th Cir. 2012)). Moreover, *Graham*'s analysis considered the impact of nonphysical coercion on consent. For example, it noted that one of the guards had previously given the plaintiff a blanket and a candy bar, but that the plaintiff "did not think that she had received any special treatment from him" and "did not testify that the favors influenced her." *Id.* at 1121, 1124. Finally, even if the statement "not necessarily physical" was dicta in *Graham*, its status in that case did not alter our past caselaw, which does not differentiate between physical and nonphysical coercion. Accordingly, contrary to Flowers's argument, when *Graham* acknowledged that a defendant faced with a prison sexual abuse claim may assert consent as a defense, it did not create a gap between conduct that does not violate the Constitution—consensual sex—and conduct that clearly violates the Eighth Amendment—physically forced nonconsensual sex.

We conclude that Flowers violated a clearly established right. We have long held that nonconsensual, coerced sex between a jailer and an inmate violates the Constitution. *See, e.g.*, *Giron*, 191 F.3d at 1290. And cases like *Castillo*, *Barney*, and *Smith* demonstrate that our caselaw does not distinguish between sexual abuse

15

accomplished through physical and nonphysical coercion.[5] *See Castillo*, 790 F.3d at

1016*,* 1021; *Smith*, 339 F.3d at 1216; *Barney*, 143 F.3d at 1304, 1310. Given the

context of this case and the facts as we must construe them in this interlocutory

appeal—the inherently coercive nature of prisons, Flowers giving Brown cigarettes,

and Brown's testimony, including the fact that she was crying during the sex—

existing caselaw made it "clear to a reasonable officer that" Flowers's "conduct was

unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (quoting *Saucier v. Katz*,

533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan*, 555

U.S. 223 (2009)). And considering the nature of the constitutional violation—where

Flowers's use of force was in no way related to his duties as a jailer, as opposed to

---

[5] Brown also argues that amendments to 42 U.S.C. § 1997e(e), which regulates lawsuits brought by prisoners, clearly establishes her right. Specifically, Brown explains that previously, a prisoner could not bring an action for "mental or emotional injury suffered while in custody without a prior showing of physical injury." § 1997e(e) (2006). But after a 2013 amendment, § 1997e(e) no longer requires prisoners to show a physical injury in order to bring an action for mental or emotional injuries that resulted from the "commission of a sexual act." Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4 § 1101, 127 Stat. 54, 134 (2013). An evolving standard of decency informs the Eighth Amendment, and it is true that legislation can inform this standard. *Atkins v. Virginia*, 536 U.S. 304, 312 (2002); *see also Scioners v. Lockhart*, 946 F.3d 1256, 1271–72 (11th Cir. 2020) (Rosenbaum, J., concurring) (relying on 2013 amendment of § 1997e(e) as evidence of evolving standard of decency in prisoner's sexual-abuse case). But Brown does not argue that § 1997e(e) informs the evolving standard of decency, instead concluding that § 1997e(e) clearly established her right because it demonstrates that Flowers's conduct was "condemned by federal statute." Aplee. Br. 14. This argument conflates conduct made actionable by federal statute with conduct that violates the Constitution.

Additionally, we note that although Brown repeatedly references the fact that Flowers was guilty of rape, she does not argue that the Oklahoma legislature's decision to criminalize all sex between guards and inmates is evidence of an evolving standard of decency. *See* § 1111(7).

16

being at the "hazy border between excessive and acceptable force"—a case involving the same type of coercion and evidence of lack of consent is unnecessary to place the unconstitutionality of Flowers's conduct "beyond debate." *Mullenix*, 136 S. Ct. at 308, 312 (first quoting *Brosseau*, 543 U.S. at 201; second quoting *Ashcroft*, 563 U.S. at 741); *cf. A.N.*, 928 F.3d at 1199. We therefore conclude that Flowers violated a clearly established right, and we affirm the district court.[6]

## II.  Motion to Seal

Flowers filed a motion to seal portions of the record, and Brown filed a motion in opposition. The Clerk of Court provisionally sealed some of those documents and referred the matter to us. We must now consider whether to permanently seal any of the documents Flowers moved to seal, which consist of jail records, including a diagram of the jail, recorded interviews that the jail conducted as part of its internal investigation, and jail surveillance footage; deposition excerpts; discovery responses; and arrest, court, and incarceration records of both parties. We will not permanently seal any documents unless Flowers "overcomes a presumption in favor of access to judicial records by 'articulat[ing] a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process.'" *Sacchi v. IHC Health Servs., Inc.*, 918 F.3d 1155, 1160 (10th Cir. 2019) (alteration in the original) (quoting *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135–36 (10th Cir. 2011)).

---

[6] For similar reasons, we reject Flowers's argument that Brown did not meet her burden below.

Flowers argues that the jail records should remain sealed for the safety of the jail, as they show which areas of the jail are surveilled and the methods by which the Sheriff investigates criminal conduct within the jail. Consistent with Flowers's argument, courts have sealed records out of concern for the safety of those who live and work in jails. *See Goff v. Graves*, 362 F.3d 543, 550 (8th Cir. 2004) (upholding order to seal in order "to protect prison security and informant safety"); *Clark v. New Mexico Dep't of Corr.*, 58 F. App'x 789, 792 (10th Cir. 2003) (unpublished) (sealing "report contain[ing] information that has the potential to seriously jeopardize [the plaintiff's] and other inmates' safety"). Thus, we grant Flowers's motion to seal exhibits 42 to 59. In her briefing on this issue, Brown included a link to where her counsel posted some of these exhibits online. Because we seal exhibits 42 to 59, we additionally order Brown's counsel to remove any copies of these exhibits he posted online.

Flowers next argues that unsealing the deposition transcripts would undercut the privacy interests of nonparties. But he does not explain how this concern constitutes "a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process." *Sacchi*, 918 F.3d at 1160 (quoting *Eugene S.*, 663 F.3d at 1135–36). And Flowers makes no argument for why we should permanently seal the remainder of the record, including discovery responses and publicly filed criminal and court records. We therefore deny Flowers's motion to seal to the extent it seeks to seal exhibits 1 to 41.

18

**Conclusion**

We conclude that Flowers violated Brown's constitutional right to be free from sexual abuse when he coerced Brown into having sex without her consent and that we do not have jurisdiction to consider Flowers's argument that the district court erred in finding that Brown did not consent. Next, considering the facts as we must construe them on this interlocutory appeal alongside our caselaw on the sexual abuse of inmates, we find that this right was clearly established at the time of the violation. We therefore affirm the district court's order denying Flowers summary judgment. Finally, we order that the portions of the record relating to the jail remain sealed and that the remainder of the record be unsealed.