FILED
United States Court of Appeals
Tenth Circuit

January 7, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

CAMILLE STURDIVANT,

    Plaintiff - Appellee,

v.

CARLEY FINE,

    Defendant - Appellant,

and

BLUE VALLEY UNIFIED SCHOOL
DISTRICT, USD 229; AMY
PRESSLY,

    Defendants.

No. 20-3147

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:18-CV-02661-JWL-TJJ)**

_____

Gregory P. Goheen, McAnany, Van Cleave & Phillips, P.A., Kansas City, Kansas, on behalf of the Defendant-Appellant.

Marie L. Gockel (Lynne Jaben Bratcher and Erin Vernon with her on the brief), Bratcher Gockel Law, L.C., Independence, Missouri, on behalf of the Plaintiff-Appellee.

_____

Before **MATHESON**, **BACHARACH**, and **CARSON**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

Ms. Camille Sturdivant[1] sued her former coach on a high school dance team, Ms. Carley Fine, invoking 42 U.S.C. § 1983 and alleging race discrimination in violation of the Fourteenth Amendment's Equal Protection Clause.[2] *See* 42 U.S.C. § 1983; U.S. Const. amend. XIV. Ms. Fine moved for summary judgment, urging qualified immunity based on the absence of

- an act under color of state law and

- a denial of equal protection.

The district court denied the motion, concluding that a reasonable factfinder could infer that Ms. Fine had acted as head coach and "intentionally deprived [Camille] of educational benefits based on [her] race." Appellant's App'x at 319. Ms. Fine appealed.

Ms. Fine presents two alternative arguments for qualified immunity:

1.  She did not act under color of state law because she was no longer employed as the head coach when she allegedly violated Camille's rights.

2.  She did not violate a clearly established constitutional right.

_____

[1]    We refer to Ms. Sturdivant by her first name (Camille). We mean no disrespect; we use her first name only for clarity because she was a high-school student when the events took place.

[2]    Camille also sued the school district, the principal, the dance team's choreographer, and a teacher whose child had also danced on Camille's team; but the claims against these parties are not at issue.

We lack jurisdiction to consider Ms. Fine's first argument (that she did not act under color of state law). Our jurisdiction in this interlocutory appeal does not extend to the applicability of § 1983. We thus dismiss this portion of the appeal.

We do have jurisdiction to consider Ms. Fine's second argument (that she didn't violate a clearly established right). But a reasonable factfinder could find the violation of a clearly established right to equal protection. So we affirm the district court's denial of summary judgment based on qualified immunity.

## I.      Ms. Fine uses a racial slur when texting about Camille.

Camille, an African-American student, participated in the Dazzlers dance team at her high school. The head coach was Ms. Fine.

In her senior year of high school, Camille earned a spot on a major university's elite dance team. Another girl (Maggie) didn't make the team. When Ms. Fine learned the results, she texted the Dazzlers' choreographer, attributing Camille's success to her race:

| | |
|---|---|
| Choreographer: | i can't believe maggie didn't make it again<br>i'm heart broken |
| Ms. Fine: | I KNOW<br>AND CAMILLE MADE [THE TEAM]<br>I can't talk about it |
| Choreographer: | THAT DOESNT MAKE SENSE<br>i'm so mad |

| Ms. Fine: | It actually makes my stomach |
| | Hurt |
| | Bc she's f*****g black |
| | I hate that |

*Id.* at 154, 227 (capitalization in original).

During a later dance practice, Camille scanned Ms. Fine's text messages, trying to find music for a dance routine. While scanning the texts, Camille spotted Ms. Fine's exchange with the choreographer. Camille photographed the texts and shared them with her parents, who complained to the principal.

## II.    Ms. Fine loses her title as the Dazzlers' head coach.

The next day, the school's principal and director of human resources told Ms. Fine that

- she was no longer the dance coach and couldn't participate in any upcoming dance team activities, including the school's final Spring Show, and

- she had fulfilled her contract with the school.

The contract lasted another ten days, and Ms. Fine obtained payment for these days.

The principal announced to the team that Ms. Fine would no longer serve as the head coach and arranged for two other faculty members to fill in. But the evidence suggests that these faculty members never assumed the head coach's duties.

4

### III.   Ms. Fine texts a Dazzler, telling her to boycott Camille.

After the principal's announcement to the team, Ms. Fine received a text from her younger sister, who was also on the dance team. The text related to a tradition for team members to present seniors with flowers.

Because Camille was the only senior on the team, she'd expect flowers after the Spring Show. Flouting this tradition, Ms. Fine told her sister to arrange a boycott:

| | |
|---|---|
| Sister: | Originally Camille asked me to give her flowers<br>But I'm not gonna anymore |
| Ms. Fine: | Noooooooo your joking?!?!?<br>Did she unask you |
| Sister: | I mean no<br>She never said anything<br>But like I feel like she honestly thinks I'm doing it still<br>but I'm not |
| Ms. Fine: | You can't<br>Get everyone to boycot[t] |

*Id.* at 238.

### IV.   The Dazzlers exclude Camille and attend off-campus events with Ms. Fine.

The next night marked the start of the Dazzlers' Spring Show. By tradition, Ms. Fine would give an inspirational talk before the show. The parents arranged for all the Dazzlers—except Camille—to meet at a team member's home. Ms. Fine attended and gave the team a "pep talk."

5

The team then conducted its Spring Show on two straight nights. On the second night, all the Dazzlers—except Camille—wore ribbons with Ms. Fine's initials and took team photos. The other Dazzlers also shunned the tradition of presenting flowers to the only senior on the squad (Camille). Throughout the Spring Show, virtually every member of the dance team ignored Camille. The sole exception was the team's only other African-American member.

The next week, all the Dazzlers were supposed to sit together in their first-hour class. But at the request of Camille's mother, the principal excused Camille from attending the first-hour class for the final four days.

Camille was also excluded from the team banquet. Parents of the team members cancelled the banquet, but then arranged a team banquet away from the campus. Camille was the only Dazzler excluded.

## V.    We lack jurisdiction to consider Ms. Fine's denial of action under color of state law.

Ms. Fine denies employment as the coach when the boycott took place, arguing that her conduct as a private individual didn't constitute an act under color of state law. Action under color of state law is an element of § 1983. *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016). But in this interlocutory appeal, we have jurisdiction only to consider the district court's denial of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). And a challenge to the elements of

§ 1983 does not involve qualified immunity. So we dismiss Ms. Fine's argument that she was not acting under color of state law.

Qualified immunity protects public officials from liability for violating statutory or constitutional rights that are not clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine ensures that officials may incur liability only upon fair notice that their conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

The first step in qualified immunity is to determine whether someone could reasonably find a constitutional violation. *See Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020). For this step, Camille alleges denial of her right to equal protection under the Fourteenth Amendment.

Ms. Fine argues that no reasonable jury could find a violation of Camille's constitutional rights because she did not act under color of state law. But action under color of state law is an element of § 1983, not the Fourteenth Amendment's Equal Protection Clause. *See, e.g.*, *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

Unlike the Constitution, "[§ 1983] is not itself a source of substantive rights." *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020) (quoting *Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017)).[3] Section 1983 serves instead only as a vehicle to "provide[] relief

---

[3]    The Fourteenth Amendment's Equal Protection Clause requires state action. This requirement is closely related to § 1983's requirement of

7

against those who, acting under color of law, violate federal rights created elsewhere." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016) (quoting *Reynolds v. Sch. Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1536 (10th Cir. 1995)).[4]

Our review here is limited to qualified immunity, which focuses on whether Ms. Fine violated Camille's right to equal protection. We lack jurisdiction to address whether Camille can use § 1983 as a statutory vehicle to obtain a remedy. This part of the appeal thus falls outside our jurisdiction.

**VI.    Ms. Fine wasn't entitled to qualified immunity based on her denial of discrimination to withhold an educational benefit.**

Although we lack jurisdiction to consider Ms. Fine's denial of action under color of state law, she also insists that she didn't discriminate against Camille or deny her an educational benefit. We have jurisdiction

---

action under color of state law. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 935 & n.18 (1982). Despite this close relationship, Ms. Fine has not developed a discrete challenge to the Fourteenth Amendment's requirement of state action. *See United States v. Martinez*, 518 F.3d 763, 768 (10th Cir. 2008) (stating that when the appellant does not develop an argument in his or her opening brief, we deem that argument waived).

[4]    Ms. Fine made the same point in district court, arguing: "Because § 1983 itself 'does not create any substantive rights, but merely provides relief against those who, acting under color of law, violate federal rights created elsewhere', Plaintiff must assert her claim based on some independent basis under the U.S. Constitution or federal statute." Appellant's App'x at 84 (quoting *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016)).

over this part of the appeal. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Though jurisdiction exists, we affirm the district court's denial of qualified immunity.

### A.    Camille's evidence reflected a denial of equal protection.

The threshold issue is the existence of a constitutional violation. *See* p. 7, above. For this issue, the parties agree that Camille must prove that Ms. Fine

- treated Camille differently than others similarly situated based on race[5] and

- deprived Camille of an educational benefit or opportunity.

We thus view the claim "through the prism of" these elements. *United States v. Dominguez*, 998 F.3d 1094, 1110 (10th Cir. 2021).[6]

Ms. Fine challenges

- the first element on the ground that she did not treat Camille differently than similarly situated students and

- the second element on the ground that the boycott didn't affect educational benefits or opportunities.

---

[5]    Ms. Fine doesn't dispute the reasonableness of a finding of racial animus. *See* Appellant's Reply Br. at 6 (stating that Ms. Fine's racial motivation "is not an issue").

[6]    We do not imply that these elements "invariably govern[];" we instead accept the parties' agreement on these elements. *Dominguez*, 998 F.3d at 1110 n.10.

9

1.    **Someone could reasonably find that Ms. Fine treated Camille differently than similarly situated students.**

Ms. Fine denies acting as the coach and argues that the team-members' families acted on their own.[7] We reject these arguments.

Ms. Fine's role in the boycott would be obvious under Camille's version of events. In considering that version,[8] the district court concluded that someone could reasonably find ten facts:

1.    Ms. Fine texted that Camille had made the university dance team "[b]c she's f*****g black."

2.    After Ms. Fine lost her title as head coach, she texted a Dazzler to "[g]et everyone to boycot[t]."

3.    Ms. Fine then attended a Dazzler team meeting in a private home even though no one had invited Camille.

4.    Ms. Fine gave her traditional inspirational speech at the meeting to prepare the other dancers for the Spring Show.

5.    At the Spring Show, all other dancers wore ribbons bearing Ms. Fine's initials.

6.    The other dancers excluded Camille from photographs of the team and jettisoned tradition by refusing to give flowers to Camille as the only graduating senior.

7.    The other dancers ostracized Camille, causing her to miss four classes.

---

[7]    Ms. Fine couches this argument as a denial of conduct under color of state law. But she also appears to imply that she couldn't violate the Equal Protection Clause because neither the school nor the families had given her any authority over the team.

[8]    In considering qualified immunity, we ordinarily accept the plaintiff's version of facts. *A.M. v. Holmes*, 830 F.3d 1123, 1136 (10th Cir. 2016).

8.   Ms. Fine attended a team meeting even though no one had invited Camille.

9.   While acting to exclude Camille, Ms. Fine remained in contact with the other dancers and their parents.

10.  Ms. Fine continued to get paid under her contract while the team ostracized Camille, with no other employee filling the coach role.

Appellant's App'x at 293–98, 313–15.

Under these facts, a reasonable factfinder could infer that Ms. Fine had treated Camille differently than other Dazzlers by

- exercising the authority of a coach to lead a boycott and

- causing the exclusion of Camille from team activities.

**2.   Deprivation of an Educational Benefit or Opportunity**

For an equal-protection claim, the plaintiff must generally show that the discrimination caused an adverse effect. *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021). For purposes of this showing, the parties agree that the adverse effect must involve the deprivation of an educational benefit or opportunity. We can thus assume for the sake of argument that Camille had to create a triable fact-issue on the loss of an educational benefit or opportunity. *See* note 6, above.

Ms. Fine argues that she attended only private events taking place away from the school (like the team meeting and banquet), which did not constitute educational benefits or opportunities. But even if the team

11

meeting and banquet had constituted private events, Camille presented evidence of a need to miss four first-hour classes. A reasonable factfinder could thus infer that Ms. Fine's conduct had ultimately caused the loss of an educational benefit or opportunity.

* * *

We conclude that a reasonable factfinder could infer that Ms. Fine had violated Camille's right to equal protection.

### B.    Camille's evidence also reflected the violation of a clearly established constitutional right.

We must also determine whether Camille's right to equal protection was clearly established at the time of the relevant conduct. *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020).

A constitutional right is clearly established if "every reasonable official would have understood that" their conduct violated that right. *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1197 (10th Cir. 2019) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). A right may be clearly established by a precedent or the weight of authority elsewhere. *Brown*, 974 F.3d at 1184. "[B]ut a case directly on point is not required so long as 'existing precedent [has] placed the . . . constitutional question beyond debate.'" *A.N.*, 928 F.3d at 1197 (second alteration in original) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)).

12

"[G]eneral statements of the law are not inherently incapable of giving fair and clear warning" that particular conduct is unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)). "[A] general constitutional rule . . . may apply with obvious clarity to the specific conduct in question" even if no court has held that conduct unlawful. *Id.* (quoting *Lanier*, 520 U.S. at 271); *see also Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020) (per curiam) (concluding that the extreme facts did not require a case on point because "any reasonable officer should have realized that [the plaintiff]'s conditions of confinement [had] offended the Constitution").

We recently recognized that the Equal Protection Clause prohibits the "intentional, arbitrary and unequal treatment of similarly situated individuals . . . ." *Ashaheed v. Currington*, 7 F.4th 1236, 1247 (10th Cir. 2021) (quoting *A.N. ex rel. Ponder v. Syling,* 928 F.3d 1191, 1198 (10th Cir. 2019)). Applying this right over 70 years ago, the Supreme Court held that an African-American student "must receive the same treatment at the hands of the state as students of other races." *McLaurin v. Okla. State Regents for Higher Educ.*, 339 U.S. 637, 642 (1950); s*ee also Brown v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294, 298 (1955) ("declaring the fundamental principle that racial discrimination in public education is unconstitutional").

Given the long-standing recognition of an African-American student's right to equal treatment, Ms. Fine had fair notice that the Equal Protection Clause would prohibit her orchestration of a racially motivated boycott against Camille.

Ms. Fine's three contrary arguments are not persuasive.

First, Ms. Fine argues that the district court should not have relied on *Ramirez v. Department of Corrections*, 222 F.3d 1238, 1243–44 (10th Cir. 2000), because there the facts had differed from ours. We agree with Ms. Fine that *Ramirez* had differed factually because it involved discrimination against an employee rather than a student. But the lack of a precedent involving a student does not necessarily bear on the clarity of the constitutional right. *See Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999) (rejecting the defendants' argument for qualified immunity based on the lack of a prior opinion "holding an individual *school employee* liable for sexual harassment [of a student] under the Fourteenth Amendment" (emphasis in original)); *see also Sh.A. ex rel. J.A. v. Tucumcari Mun. Sch.*, 321 F.3d 1285, 1288–89 (10th Cir. 2003) (concluding that a teacher was not entitled to qualified immunity from a student's claim of sexual harassment because the right had been clearly established in employment cases). *Ramirez* aside, a constitutional right may be clearly established based on general statements of the law. *See* pp. 12–13, above.

14

Second, Ms. Fine argues that *White v. Pauly* requires case law with similar facts. *See White v. Pauly*, 137 S. Ct. 548 (2017) (per curiam). But the Supreme Court in *White* recognized that "a case directly on point" is unnecessary if the constitutional right is "beyond debate." *Id.* at 551 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). We've explained that *White* acknowledged the potential for "general rules of law." *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1198 (10th Cir. 2019). Given this acknowledgment, we've recognized that conduct can sometimes violate a clearly established right "even though the very action in question has not previously been held unlawful." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Our case supplies an example: Even without a precedent involving similar facts, the Equal Protection Clause obviously prohibited an acting head coach from orchestrating a boycott based on a team member's race.

Third, Ms. Fine relies on the district court's statement that "[n]either party has set forth any framework for analyzing whether plaintiff's evidence is sufficient to establish a constitutional violation." Appellant's Opening Br. at 19 (quoting Appellant's App'x at 310). This reliance is misplaced, for the parties' lack of analysis about the applicable test does not trigger qualified immunity; what matters is whether the defendant's conduct violated a clearly established constitutional right. *See Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020). The constitutional right

15

here—protection from a racially motivated boycott—was clearly established.

In acting as the coach, Ms. Fine had notice that our case law would prohibit exclusion of a team member based on race. For example, in *Seamons v. Snow*, we concluded that a high school football coach had lacked qualified immunity when he kicked a player off of the team for refusing to apologize after the player had reported a hazing incident. 206 F.3d 1021, 1030–31 (10th Cir. 2000). There we concluded that

- a case on point was "not required" and

- a reasonable coach should have known that the Constitution had prohibited exclusion of students based on their exercise of free speech.

*Id.* at 1030 (quoting *Patrick v. Miller*, 953 F.2d 1240, 1249 (10th Cir. 1992)). Though our case involves a denial of equal protection rather than a denial of free speech, the constitutional violation would have been equally obvious to a high school dance coach.

## VII.  Conclusion

We lack jurisdiction to consider Ms. Fine's argument that she did not act under color of state law. But we have jurisdiction to consider whether Ms. Fine violated a clearly established constitutional right. In considering that question, we view the evidence favorably to Camille. With that view, a

16

reasonable factfinder could determine that Ms. Fine had violated a clearly established constitutional right. We thus

- dismiss Ms. Fine's assertion of qualified immunity as a private individual who didn't act under color of state law and

- affirm the denial of summary judgment on the violation of a clearly established right.

17

*Sturdivant v. Fine*, No. 20-3147
**BACHARACH**, J., concurring

I join the majority opinion, but write separately to address an aspect of Ms. Fine's denial of action under color of state law. In oral argument, Ms. Fine argued that she was acting only as a private individual. As the majority states, we lack jurisdiction to consider this argument. But if we were to credit Ms. Fine's characterization of herself as a private actor, she likely couldn't assert qualified immunity.

When sued under § 1983, private individuals are not automatically entitled to assert qualified immunity. *Richardson v. McKnight*, 521 U.S. 399, 412 (1997). If Ms. Fine had acted as a private individual, she could assert qualified immunity only if she showed

- a firmly rooted common-law tradition of immunity for similar private individuals or

- a strong basis in public policy to extend qualified immunity to similar private individuals.

*Tanner v. McMurray*, 989 F.3d 860, 866–67 (10th Cir. 2021).

Ms. Fine probably failed to meet this burden. Both here and in district court, she appeared to assume that she could assert qualified immunity even if she were acting only as a private individual. Appellant's Opening Br. at 10; Appellant's App'x at 88; Oral Argument at 4:15–5:32, 6:30–43. But she

- cites no authority extending qualified immunity to former government employees for action taken after leaving government employment and

- hasn't discussed a history of immunity for former government employees or policy reasons to extend qualified immunity to former government employees.

So Ms. Fine has probably failed to show a right to assert qualified immunity for her actions after leaving governmental employment. *See Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000) (declining to consider a former county employee's challenge to the denial of qualified immunity because he hadn't explained why this defense should be available to him as a private citizen). So she would likely lack eligibility for qualified immunity if we were to credit her characterization as a private individual.

As the appellant, Ms. Fine bears the burden to demonstrate the district court's error and her entitlement to relief. *Hernandez v. Starbuck*, 69 F.3d 1089, 1093 (10th Cir. 1995). So the relevant question is whether Ms. Fine's characterization of her status would entitle her to qualified immunity. If Ms. Fine were acting only as a private individual, as she insists, she would probably lack eligibility for qualified immunity.

2